UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 08-67-GWU

RALPH RISNER,                                                            PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                 DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

       Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

08-67  Ralph Risner

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

08-67 Ralph Risner

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

08-67  Ralph Risner

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Ralph Risner, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of an anxiety disorder, borderline intellectual functioning, and a mathematics disorder.  (Tr. 24).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Risner retained the residual functional capacity to perform his past relevant work as a custodian.  (Tr. 26-9).  Accordingly, he was not entitled to benefits.  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, "educational background," and work experience could perform any jobs if he were capable of "medium" level exertion and retained the ability to understand and follow simple instructions, sustain attention to repetitive tasks, relate to others including fellow workers and supervisors, and adapt to normal work

pressures and stresses. (Tr. 289).[1] The VE responded that such a person would be able to perform the plaintiff's past work as a janitor. (Id.). In the alternative, she named several other unskilled sedentary, light and medium level jobs, including cleaner, hand packer, assembler, cafeteria attendant, and bench laborer. (Tr. 289-90). On further questioning by the plaintiff's representative, the VE testified that all of the jobs except for cafeteria attendant would still be available if the hypothetical individual had a "moderately limited" ability to maintain concentration, persistence, and pace, understand, remember, and carry out detailed instructions, interact with the general public, and had a fourth grade reading ability and a third grade mathematics ability. (Tr. 290).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

Mr. Risner alleged disability due to left leg and arm injuries after sustaining a fall on his job in 2003. (Tr. 67). He was not sure what his diagnosis was, although he recalled a doctor telling him his leg might have to be amputated. (Tr. 251-5). He still suffered from leg and back pain severe enough to prevent him from working, and had to spend much of his time lying on a couch and elevating his leg.

---

[1] Mr. Risner was 41 years old at the time of the July 4, 2006 administrative hearing, testified that he had a tenth grade education but had poor reading and arithmetic skills, and had work experience as a construction laborer and school custodian. (Tr. 241, 244-9).

8

(Tr. 261). He had had no recent medical treatment because of a lack of insurance. (Tr. 262). Mentally, he described difficulty with nervousness, which he traced to a motor vehicle accident several years before his alleged onset date, and stated that he continued to have panic attacks. (Tr. 278). He had difficulty following directions, had trouble with concentration and attention, and did not like crowds. (Tr. 277).

Medical records prior to the alleged onset date in 2003 indicate that Mr. Risner was treated for neck, low back, and right leg pain following a May, 2001 motor vehicle accident, but examinations, including an MRI of the cervical and thoracic spine, did not appear to reveal any objective findings apart from a syrinx, which apparently was not assigned any significance. (Tr. 115-120).

Following Mr. Risner's fall in 2003, his family physicians noted left leg swelling and erythema, as well as decreased range of motion of the back, and referred him to specialists, including an orthopedist, Dr. Michael Lyons. (Tr. 136-45). Dr. Lyons assessed a periosteal contusion with probable periosteal tearing of the left upper shin, with only local pain to percussion and palpation. (Tr. 126). The left knee and left ankle were normal. (Id.). Dr. Lyons could find no swelling clinically, but advised Mr. Risner to wear a compression stocking, seek physical therapy, and get a bone scan for a possible stress fracture. (Tr. 125). He was permitted to use a cane or crutch if needed pending the bone scan results. (Id.). Apparently, he did not follow up with Dr. Lyons, and reported to his family physician

that he had never been given an appointment for the bone scan. (Tr. 129). He did not receive any medical care after this point, according to the records submitted. None of the treating sources suggested any permanent functional restrictions.

Mr. Risner had a consultative physical evaluation by Dr. Mark Burns in August, 2004. Dr. Burns found no physical abnormalities of any kind and did not indicate that the plaintiff would have any restrictions. (Tr. 198-200).

The plaintiff does not object to any of the ALJ's physical findings on appeal, and the court concludes that this portion of the decision is supported by substantial evidence.

From a psychological standpoint, Mr. Risner had been treated for anxiety prior to his 2003 accident (e.g., Tr. 149, 151), but none of his treating sources indicated that he would have any restrictions.

Dr. B. Paul Carney, a psychologist, examined Mr. Risner in July, 2004, at which time he alleged nervousness, shakiness, and poor sleep since an alleged automobile accident "approximately two years ago." (Tr. 174). Dr. Carney felt that Mr. Risner was a poor historian who had difficulty spontaneously identifying psychiatric symptoms and considered his reliability only marginal. (Tr. 174-5). His attention and concentration were within normal limits, however, and his mood appeared to be normal. (Tr. 175). He complained of difficulty sleeping despite getting eight hours of sleep a night. The psychologist estimated low average to

08-67  Ralph Risner

borderline intellectual functioning. (Id.). He answered many questions by saying he didn't know, but denied difficulties with activities of daily living and reported regular contact with family members. (Tr. 176-7). Dr. Carney diagnosed an anxiety disorder, "rule out" malingering, and possible borderline intellectual functioning. (Tr. 178). He felt that Mr. Risner would have a "fair" ability to understand and follow simple instructions, sustain attention to repetitive tasks, relate to others such as fellow workers and supervisors, and adapt and respond to the stress and pressures found in a day-to-day work setting. (Tr. 178).

Dr. William Rigby, another psychologist, conducted a second psychological evaluation of the plaintiff in August, 2004. (Tr. 202). In contrast to his statements to Dr. Carney, Mr. Risner claimed not to remember the last time he visited with other family members or friends, but Dr. Rigby noted no problems with his social capabilities. (Tr. 204). Objective testing showed his reading ability at the fourth grade level, his spelling ability at the fifth grade level, and his arithmetic ability at the third grade level. (Tr. 205). Dr. Rigby stated that the plaintiff was overtly cooperative, and the scores could not be dismissed as invalid, but Mr. Risner did have a much better speaking vocabulary than reading capability. (Id.). His score on the Rey 15-Item Test indicated that he was not malingering. (Id.). Intelligence testing showed a verbal IQ of 76, a performance IQ of 75, and a full scale IQ of 74, which were reasonably descriptive of his intellectual capabilities. (Id.). Dr. Rigby

08-67  Ralph Risner

diagnosed an anxiety disorder "by claimant allegation," a mathematics disorder, and borderline intellectual functioning.  (Tr. 206).  He felt that Mr. Risner would have a "good" ability to understand and follow simple instructions, sustain attention to repetitive tasks, and to relate to others such as fellow workers and supervisors. (Id.).  His ability to adapt or respond to the stress and pressures normally found in a day-to-day work setting was "fair."  (Id.).  The terms "fair" and "good" were not defined.

Two state agency psychologists, Dr. Edward Stodola and Dr. Lea Perritt, reviewed the evidence and concluded that the plaintiff would have a moderately limited ability to understand, remember, and carry out detailed instructions and interact appropriately with the general public.  (Tr. 194-5, 222-3).  Although the ALJ did not include these specific limitations in his hypothetical question, the plaintiff's representative did include them in his alternative hypothetical question, along with his fourth grade reading and third grade arithmetic skills, and the VE's testimony was that there would still be a significant number of jobs the plaintiff could perform.

The plaintiff focuses on a comment included in Dr. Stodola's assessment that Mr. Risner would have a good ability to "adapt to low level stress work."  (Tr. 196). He correctly notes that this is not entirely consistent with the ALJ's finding that Mr. Risner could "adapt to normal work pressures and stress."  (Tr. 26).  However, Dr. Stodola was a non-examining source, and the ALJ could reasonably have relied on

08-67  Ralph Risner

the statements by the examining sources that the plaintiff would have a "fair" ability to adapt and respond to normal work-related stress and pressure. (Tr. 178, 206). As previously noted, the term "fair" was not defined by either of the examiners but it is not facially inconsistent with the ALJ's finding.

The decision will be affirmed.

This the 4th day of March, 2009.

Signed By:

G. Wix Unthank

United States Senior Judge

13